**No. 25-1895**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

IN RE: SAMSUNG ELECTRONICS AMERICA INC.

On Appeal from the United States District Court for the District of New Jersey, No. 1:23-md-03055-CPO-EAP, Hon. Christine P. O'Hearn

# REDACTED REPLY BRIEF OF APPELLANTS


James E. Cecchi
Caroline F. Bartlett
Jason H. Alperstein
James A. O'Brien III
CARELLA BYRNE CECCHI
BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
(973) 994-1700
jcecchi@carellabyrne.com
cbartlett@carellabyrne.com
jalperstein@carellabyrne.com
jobrien@carellabyrne.com

David C. Frederick
Ryan M. Folio
Alyssa J. Picard
KELLOGG, HANSEN, TODD,
FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
dfrederick@kellogghansen.com
rfolio@kellogghansen.com
apicard@kellogghansen.com

*Counsel for Appellants*


August 20, 2026

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..... iii

INTRODUCTION ..... 1

ARGUMENT ..... 3

I. PLAINTIFFS' ALLEGATIONS—NOT SAMSUNG'S DENIALS—CONTROL ON APPEAL OF THE DISMISSAL ORDER ..... 3

II. THE DISTRICT COURT ERRED IN HOLDING THAT PLAINTIFFS LACK ARTICLE III STANDING ..... 8

A. Plaintiffs Plead Several Injuries-In-Fact Sufficient For Standing ..... 8

1. Plaintiffs plead an imminent risk of identity theft and fraud ..... 8

a. Because Plaintiffs allege theft and publication of their information, an imminent risk of identity theft and fraud exists ..... 8

b. Plaintiffs also allege all three *Clemens* factors ..... 11

2. Plaintiffs plead several other injuries-in-fact ..... 20

a. Plaintiffs allege they lost the benefit of the bargain and the sale value of their information ..... 20

b. Plaintiffs allege they were overcharged for Samsung's products ..... 23

B. Plaintiffs Plead Their Injuries Are Fairly Traceable And Redressable ..... 25

III. THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING LEAVE TO AMEND ..... 26

IV. THE DISTRICT COURT ERRED IN DISMISSING WITH PREJUDICE ..... 28

CONCLUSION ..... 29

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF BAR MEMBERSHIP

# TABLE OF AUTHORITIES

Page

## CASES

*Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1 (D.D.C. 2019)....................................24

*Beck v. McDonald*, 848 F.3d 262 (4th Cir. 2017)..................................................11

*Bennett v. Spear*, 520 U.S. 154 (1997) ............................................................25, 26

*Burlington Coat Factory Sec. Litig., In re*, 114 F.3d 1410
(3d Cir. 1997)...........................................................................................6, 7

*C.C. v. Med-Data Inc.*, 2022 WL 970862 (D. Kan. Mar. 31, 2022) .......................24

*Capiau v. Ascendum Mach., Inc.*, 2024 WL 3747191
(W.D.N.C. Aug. 9, 2024) ..........................................................................22, 23

*Carlsen v. GameStop, Inc.*, 833 F.3d 903 (8th Cir. 2016).......................2, 20, 21, 23

*Clemens v. ExecuPharm Inc.*,
48 F.4th 146 (3d Cir. 2022)................. 1, 3, 10, 11, 12, 13, 14, 16, 18, 21, 25

*Clippinger v. State Farm Auto. Ins. Co.*, 156 F.4th 724 (6th Cir. 2025)................21

*Cook v. GameStop, Inc.*, 148 F.4th 153 (3d Cir. 2025) ....................................28, 29

*Cooper v. Bonobos, Inc.*, 2022 WL 170622 (S.D.N.Y. Jan. 19, 2022) ...................22

*Doe v. Princeton Univ.*, 30 F.4th 335 (3d Cir. 2022) ...............................................7

*Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig., In re*,
7 F.3d 357 (3d Cir. 1993) ..........................................................................7

*Holmes v. Elephant Ins. Co.*, 156 F.4th 413 (4th Cir. 2025) ..................................11

*Horizon Healthcare Servs. Inc. Data Breach Litig., In re*,
846 F.3d 625 (3d Cir. 2017) .....................................................................16

*Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig., In re*, 903 F.3d 278 (3d Cir. 2018) ..........................................24

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018)........................7

*Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010)....................................10

*Legg v. Leaders Life Ins. Co.*, 574 F. Supp. 3d 985 (W.D. Okla. 2021) ................24

*Lewis v. GEICO*, 98 F.4th 452 (3d Cir. 2024).......................................................21

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ..........................................3, 26

*Marriott Int'l, Inc., Customer Data Sec. Breach Litig., In re*,
440 F. Supp. 3d 447 (D. Md. 2020)...............................................................22

*McGowan v. CORE Cashless, LLC*, 2023 WL 8600561
(W.D. Pa. Oct. 17, 2023) ...........................................................................22

*McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295
(2d Cir. 2021)......................................................................................10, 12, 13

*Otis v. Demarasse*, 886 F.3d 639 (7th Cir. 2018)....................................................8

*Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629 (7th Cir. 2007) ...............................10

*Reilly v. Ceridian Corp.*, 664 F.3d 38 (3d Cir. 2011)........................................9, 10

*Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688 (7th Cir. 2015) ........10, 14, 26

*Schmidt v. Skolas*, 770 F.3d 241 (3d Cir. 2014) .......................................................7

*Schuchardt v. President of United States*, 839 F.3d 336 (3d Cir. 2016) ................14

*Smallman v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175 (D. Nev. 2022) ................23

*Stallone v. Farmers Grp., Inc.*, 2022 WL 10091489
(D. Nev. Oct. 15, 2022) ..............................................................................23

*Svigals v. Lourdes Imaging Assocs., P.A.*, 2018 WL 6178863
(D.N.J. Nov. 27, 2018) ................................................................................6

*Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023) ......................................................12

*U.S. ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co.*,
839 F.3d 242 (3d Cir. 2016) ........................................................................27

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003)............................................6

*Walters v. Fast AC, LLC*, 60 F.4th 642 (11th Cir. 2023)........................................14

*Yahoo! Inc. Customer Data Sec. Breach Litig., In re*, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ....................23

*Zaidi v. Ehrlich*, 732 F.2d 1218 (5th Cir. 1984) ....................28

**OTHER AUTHORITIES**

Monique Danao, *What Can Someone Do With Your IP Address?*, Forbes (June 10, 2024), https://perma.cc/VUW4-BN2X ....................19, 20

# INTRODUCTION

Samsung's response confirms that the district court erred. Samsung concedes the standard for standing based on an imminent risk of identity theft or fraud: "[w]ith rare exception," standing exists if "multiple pieces of personally identifying information about a given consumer are stolen and then publicized." *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 158-59 (3d Cir. 2022). That risk is "particularly acute" if the information is put on the Dark Web. *Id.* at 159.

Applying that standard, Plaintiffs have standing. Samsung does not argue for any exception. And the conditions are met. Plaintiffs allege they gave multiple pieces of sensitive information to Samsung, which it stored in the [redacted] and enriched with more information. Plaintiffs allege that [redacted] then stole the information and misused it or put it on the Dark Web. Nothing more is required.

Unable to argue the law, Samsung argues the facts. It denies the sensitivity of the information; the existence of [redacted]; the involvement of [redacted]; the misuse of Plaintiffs' information; and its own culpability. But these denials contradict Plaintiffs' well-pleaded allegations. At this stage, those allegations—not Samsung's denials—control.

Indeed, Samsung's urge to deny Plaintiffs' allegations is so strong that it cites its *own fact sheet* as evidence of what "Plaintiffs allege." By substituting Plaintiffs'

actual allegations with its own preliminary, untested discovery responses, Samsung invites affirmance on an erroneous alternate ground.

Independently, Plaintiffs assert other injuries-in-fact—breach of contract, lost sale value, and overcharge—that the district court ignored. Samsung's assertion (at 4, 16) that "courts routinely reject th[e]se theories where, as here, the claimants face no actual risk of injury" misses the point. Each theory is an actual injury even absent identity theft or fraud. Samsung ignores the leading authority for the first and third theories. Opening Br. 47, 50 (citing *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 909 (8th Cir. 2016)).

Finally, the district court erred by dismissing Plaintiffs' claims without leave to amend and with prejudice. Samsung concedes that Plaintiffs never amended in response to a jurisdictional dismissal. And amendment is not futile. Samsung concedes the Stroz Materials suggest the Data Breach was broader than it admitted, affecting five other databases, including one with payment card information. Samsung's counterargument—that Plaintiffs did not submit a draft proposed amendment—fails because its own delay is to blame and Plaintiffs proffered additional facts supporting amendment.

The Court should vacate and remand.

# ARGUMENT

## I. PLAINTIFFS' ALLEGATIONS—NOT SAMSUNG'S DENIALS—CONTROL ON APPEAL OF THE DISMISSAL ORDER

A plaintiff's well-pleaded factual allegations are assumed true on appeal of a dismissal order. *See Clemens*, 48 F.4th at 150 n.1; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Here, Plaintiffs allege that they gave multiple pieces of sensitive information to Samsung and that [redacted] stole the information and misused it or put it on the Dark Web. Opening Br. 7-17. Samsung's denial of those allegations violates the rule that the allegations are assumed to be true and control.

**(1) *Sensitivity of the information.*** The crux of Samsung's argument (at 1) is the parties' supposed "agree[ment]" that the Data Breach exposed only "names, addresses, other contact and demographic information, and device information"—most of which is "mundane and/or readily available online." The parties do *not* agree. As alleged, the information that [redacted] stole still is unknown but includes information that is neither mundane nor readily available. Opening Br. 7-8, 14. Because the information can be used for identity theft and fraud, it supports standing.

**(2) *Existence of* [redacted].** Samsung denies the existence of [redacted]; its brief uses that term just twice (at 37) when quoting Plaintiffs and otherwise refers (at 5) to a breach of its "systems." As alleged, [redacted] stole information from [redacted], which is uniquely sensitive because it is

a one-stop shop for detailed personal profiles of consumers and therefore enables the social-engineering cyberattacks that [redacted] is skilled at perpetrating. Opening Br. 7-13. Again, the nature of the information supports standing.

**(3) *Involvement of*** [redacted]**.** Samsung denies [redacted] involvement. It mentions [redacted] just four times and calls its involvement (at 43) "speculation." And it ignores the allegation that [redacted] breached Samsung's systems just months before the Data Breach. [redacted]. Opening Br. 11-13. The intentionality of the Data Breach supports standing.

**(4) *Misuse of Plaintiffs' information.*** Samsung denies (at 3) the misuse of Plaintiffs' information, asserting that some Plaintiffs had little or "*no information exfiltrated*." That denial is for summary judgment; it does not assume the truth of Plaintiffs' allegations. As alleged, "Plaintiffs received a Data Breach notification" from Samsung "notifying [them] that their PII was compromised," and Samsung warned them about spam and suspicious activity. JA661 (¶ 154). That Plaintiffs experienced those forms of misuse after the Data Breach supports standing.

**(5) *Samsung's culpability.*** The most telling of Samsung's denials is its claim (at 2) to be "the victim." As alleged, Samsung promised to protect the information in [redacted], suffered information-security failures before and after

the Data Breach (including by [redacted]), neglected to take reasonable precautions, and failed to timely inform consumers about the Data Breach. Opening Br. 10-15. Samsung ignores these allegations about how *it* victimized *consumers*. If relevant at all in this case, Samsung's claimed victimhood certainly is irrelevant to Plaintiffs' allegations.

The only denial for which Samsung identifies any support is the fourth: Samsung pervasively cites its own fact sheet—not the SAC—to identify the information that [redacted] supposedly contained about certain Plaintiffs and to claim (at 3) that some Plaintiffs had "*no information exfiltrated whatsoever*." A jarring example occurs where Samsung asserts that "*Plaintiffs' allegations* about the exfiltrated information are modest," and cites only to *its own fact sheet*. Samsung Br. 14 (emphasis added).

Samsung's reliance on the fact sheets is improper. It cites no legal authority that the Court can consider them instead of Plaintiffs' allegations. And its only explanation (at 9, 13, 18, 39)—that the SAC "incorporate[s] the[m]"—is incorrect. The SAC states that certain allegations "are based on Samsung's Fact Sheet" "because Samsung has withheld the complete information exfiltrated during the Data [Breach], while also downplaying the scope of affected information." JA662

(¶ 156).[1] That statement did not incorporate Samsung's fact sheet; it confirms the fact sheet's limitations.[2] *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (document incorporated only if plaintiff "refers extensively to the document or the document forms the basis of the . . . claim"); *Svigals v. Lourdes Imaging Assocs., P.A.*, 2018 WL 6178863, at *12 (D.N.J. Nov. 27, 2018) (only an "undisputedly authentic document" on which plaintiff "base[s]" claims can be considered on motion to dismiss).[3]

Samsung's reliance on the fact sheets shows that the district court's opinion cannot be affirmed on its stated grounds. Unlike Samsung, the district court disclaimed reliance on the fact sheets. *See* JA32. And although the court said "it would be proper to consider" them, JA32, its cited cases are inapt. In both, securities-fraud complaints incorporated the documents they challenged because the plaintiffs' claims arose out of them: the claims would not exist without the documents. *See* JA29-30 (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d

---

[1] The Data Breach's full scope remains unknown—*Samsung* moved to seal records in this appeal because [redacted]. Dkt. 46; *see also* JA617 (¶ 3 n.1) (alleging Samsung withheld information and discovery is needed).

[2] Samsung incorrectly asserts (at 9 n.1) that "Plaintiffs drafted the fact sheets." Plaintiffs had sought more "extensive and detailed" fact sheets, which Samsung opposed. JA121-122; JA154-155.

[3] Moreover, the parts of the fact sheets (JA813-817) relied on by Samsung (at 8, 9, 13, 14, 16, 30, 34-37, 41, 42, 45) were filed *after* the SAC. *Compare* Dkts. 147 (filed Apr. 11, 2024), 162 (filed May 22, 2024), *with* JA801-817 (filed May 22, 2024).

1410, 1426 (3d Cir. 1997); *In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993)). By contrast here, Plaintiffs' claims arise out of the Data Breach, not Samsung's fact sheet. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("claims" must be "based" on document for incorporation; "explicitly cit[ing]" document is insufficient). The fact sheets are not incorporated.

Thus, Samsung's fact sheet is distinguishable from the documents in *Burlington Coat* and *Trump Casino*. The district court anticipated the fact sheet would simplify briefing on the motion to dismiss by clarifying the relevant disputes; it never suggested Plaintiffs would be bound by the sheet instead of their allegations. *See* JA119-120; JA128-130 (Plaintiffs should not have to "rely[ ] completely on what [Samsung] says"). That is particularly so because Samsung has withheld facts about the Data Breach. Opening Br. 40.[4] As Samsung's response shows, holding that the SAC incorporates *Samsung's* discovery responses would allow Samsung to write its own ticket out of this lawsuit. *See Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (even for "integral" documents, "consideration only goes so far[,] . . . the facts in the complaint must prevail").[5]

---

[4] Indeed, Samsung cites its fact sheet selectively. The fact sheet admits the [redacted] stole a long, "no[n-]exhaustive" list of information from [redacted]—all facts that Samsung now denies. *See* JA806-809.

[5] *See also, e.g.*, *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1014 (9th Cir. 2018) (defendants cannot "exploit" the incorporation-by-reference

Finally, Samsung's policy argument (at 1, 4) fails. Vacating the dismissal would not mean "every single data breach inflicts Article III injury." Samsung holds that view only because it denies all the allegations distinguishing this case from others. At the dismissal stage, these allegations—not Samsung's denial—control.

## II. THE DISTRICT COURT ERRED IN HOLDING THAT PLAINTIFFS LACK ARTICLE III STANDING

Taking Plaintiffs' allegations as true, they have standing because they allege injuries-in-fact that are fairly traceable and redressable by the requested relief.

### A. Plaintiffs Plead Several Injuries-In-Fact Sufficient For Standing

Plaintiffs plausibly allege that the Data Breach (1) created an imminent risk of identity theft and fraud, (2) deprived them of the benefit of their bargain and the sale value of their information, and (3) revealed that Samsung overcharged them.

#### 1. Plaintiffs plead an imminent risk of identity theft and fraud

##### a. Because Plaintiffs allege theft and publication of their information, an imminent risk of identity theft and fraud exists

Plaintiffs meet the undisputed *Clemens* standard because (as the district court admitted) they allege that multiple pieces of their information were stolen and publicized. Opening Br. 7-8, 11-12, 15-17, 36-37. *Clemens* also is analogous

---

doctrine to deny plaintiffs' "well-pled allegations"); *Otis v. Demarasse*, 886 F.3d 639, 646-47 (7th Cir. 2018) ("particular caution" warranted when assessing attached "document[s] authored by a defendant").

because, in both cases, plaintiffs allege that a sophisticated criminal enterprise launched an attack against the defendant, stole their information, and misused the information in signature ways, including publication on the Dark Web. *Id.* at 29-30.

Samsung's counterargument (at 27-32)—that the risk of identity theft or fraud is "speculative"—distorts Plaintiffs' allegations. Its statement (at 27) that no "Plaintiff alleges that the information . . . alone would allow a prospective criminal to perpetrate identity theft or fraud" is false. Plaintiffs allege the information is sensitive because hackers can use it for identity theft and fraud, including spear phishing, SIM-swapping, and other crimes. Opening Br. 7-10; *see also infra* p.16.

Samsung's cases are distinguishable. In *Reilly v. Ceridian Corp.*, the plaintiffs' theory was speculative because "no identifiable taking occurred; all that [wa]s known is that a firewall was penetrated." 664 F.3d 38, 44 (3d Cir. 2011). The plaintiffs did not allege that the hacker "read, copied, and understood" the information, "intend[ed] to commit future criminal acts by misusing" it, or even could do so. *Id.* at 42. Accordingly, the plaintiffs would be injured only "*if* the hacker read, copied, and understood the hacked information, and *if* the hacker attempts to use the information, and *if* he does so successfully." *Id.* at 43.

Plaintiffs' injuries are imminent by contrast. Samsung admits (at 1) a "taking occurred." And Plaintiffs allege the hacker is a sophisticated criminal enterprise that misused the information. That is, Plaintiffs allege they were injured *when* "the

hacker read, copied, and understood the hacked information," *when* "the hacker attempt[ed] to use [it]," and *when* the hacker "d[id] so." Opening Br. 31-33. Plaintiffs' allegations are like cases that *Reilly* said involve "significantly more 'imminent'" injuries. *See* 664 F.3d at 44 (citing *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629 (7th Cir. 2007), and *Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010)); *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 692-94 (7th Cir. 2015).

Samsung's related argument (at 27)—that, even after the Data Breach, hackers still must target them or others—proves too much. No data breach creates a self-executing risk of identity theft or fraud; these injuries always require some person to take action after the information is stolen. *See*, *e.g.*, *Clemens*, 48 F.4th at 154 (citing *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 301-02 (2d Cir. 2021)). Indeed, it is hard to imagine any data breach that would allow standing under Samsung's view. The same is true for Samsung's claim (at 30) that no plaintiff could fall for a cyberattack by virtue of being astute enough to sue.

Samsung also fails to show that specific alleged cyberattacks are speculative.

***Phishing.*** Samsung is incorrect (at 28-29) that Plaintiffs' phishing allegations depend on them "*volunteer*[*ing*]" information to hackers. Although phishing can target Plaintiffs, it also can target third parties (like Plaintiffs' family members). Even so, it is not speculative that even Plaintiffs could be deceived because spear

phishing attacks are much more likely to succeed. *See* JA203-207 (¶¶ 79-87). Phishing confers standing for these reasons. Opening Br. 35 (collecting cases).

The Court should not adopt the Fourth Circuit's rule requiring more than 30% of plaintiffs to "become victims of identity theft." *Holmes v. Elephant Ins. Co.*, 156 F.4th 413, 430 (4th Cir. 2025) (citing *Beck v. McDonald*, 848 F.3d 262 (4th Cir. 2017)). Even the Fourth Circuit views that rule skeptically. *Id.* at 430 n.20 (suggesting it should be limited). And it conflicts with *Clemens*, where the plaintiff made no such allegations. At any rate, Samsung's reliance (at 29) on out-of-record evidence shows the rule raises factual issues unsuitable for resolution now.

***SIM-swapping.*** Samsung's SIM-swapping arguments (at 30-32) also fail. Its assertion (at 30) that "over thirty percent of Plaintiffs did not *have* IMEI [numbers] or IP information exfiltrated" improperly substitutes its fact sheet for Plaintiffs' allegations (and implies that most Plaintiffs *did* have this information stolen). And Plaintiffs allege why third parties likely will take the actions that Samsung suggests are speculative. *See*, *e.g.*, JA646 (¶ 95); JA648 (¶¶ 102-104). Accordingly, Plaintiffs have standing under *Clemens.*

**b. Plaintiffs also allege all three *Clemens* factors**

The *Clemens* factors confirm Plaintiffs' standing. They allege (1) the Data Breach was intentional, (2) the information was misused, and (3) the nature of the information poses a risk of identity theft and fraud. *See* 48 F.4th at 153-54, 157.

Samsung barely defends the district court's *Clemens* "test." JA13. Its statement (at 32 n.8) that the district court "used the factors as an analytical framework" is incorrect. Unlike the *Clemens* Court, the district court never asked whether plaintiffs plausibly allege an imminent risk of identity theft or fraud. Opening Br. 37. Rather, the court went directly to the factors, which *Clemens* said are "guideposts." 48 F.4th at 153. In doing so, the court missed "[t]he point of th[e] factors." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 504 (2023).

Samsung also bends the truth when it says (at 33) the court gave one factor (the nature of the information) "*predominant* weight." (Emphasis added). In fact, the court held Plaintiffs' purported failure to allege this factor was "fatal." JA18. That was error because, under *Clemens*, "no single factor [is] dispositive." 48 F.4th at 153; *see also McMorris*, 995 F.3d at 301-02 (same). The out-of-circuit cases Samsung cites (at 33) are not contrary.

Samsung's analysis of the factors is similarly unpersuasive.

**(1) *Intentionality.*** As the district court acknowledged, Plaintiffs plausibly allege the first factor because they allege that "a known hacker group" [redacted] targeted and "accessed [Plaintiffs'] sensitive information." *Clemens*, 48 F.4th at 156. Samsung's claim (at 43) that [redacted] involvement is "speculation" denies Plaintiffs' allegations, which are based [redacted]. *See supra* p.4. Samsung's next argument (at 43)—that "all cyber-attacks involve some degree of

intentional conduct"—is inaccurate. Many breaches are "inadvertent." *McMorris*, 995 F.3d at 303. When information is intentionally stolen, courts "consistently" consider this factor "most important[]." *Id.* at 301. Finally, Samsung ignores (at 44) Plaintiffs' explanation for the passage of time. Opening Br. 41. The intentionality of the Data Breach supports standing.

**(2)** ***Misuse.*** Plaintiffs also plausibly allege the second factor. As in *Clemens*, they allege that the misuse they experienced bears the hacker's signature. *See* 48 F.4th at 157; Opening Br. 32-33. Plaintiffs further allege other forms of misuse (including fraudulent attempts to open accounts and unauthorized charges) that *Clemens* said favor standing. *See* 48 F.4th at 154; Opening Br. 33.

Like the district court's, Samsung's analysis violates pleading law. ***First***, four Plaintiffs allege that their information appeared on the Dark Web after the Data Breach and that [redacted] publishes the information it steals (including information it stole *from Samsung* months before). Opening Br. 16. Those allegations support an inference that [redacted] published the information. *Id.* at 38-39.

Samsung's argument (at 38-39)—that Plaintiffs must allege publication of "*specific information*" from the Data Breach—improperly conflates the "misuse"

factor with traceability,[6] a separate standing element with modest pleading requirements that Plaintiffs easily meet. *See infra* pp.25-26; *Remijas*, 794 F.3d at 696 (plaintiffs need not rule out other data breaches). Samsung also ignores a case holding that plaintiffs need not plead that detail. Opening Br. 39-40 (citing *Schuchardt v. President of United States*, 839 F.3d 336, 347-48 (3d Cir. 2016)). The Court need go no further: Plaintiffs plead publication on the Dark Web.

Regardless, Samsung's factual denials based on the fact sheets (at 39-42) fail. *See supra* pp.3-8. That Plaintiffs Allen and Peavy were notified that their information was available on the Dark Web before the Data Breach is consistent with them also receiving notifications afterward. *See* JA621, JA679, JA688 (¶¶ 12, 216, 252). "[R]ecords *associated with*" Plaintiff Baker's social security number, JA1313 (emphasis added), could have come from the Data Breach even if the number itself did not. Finally, Samsung does not try to deny Plaintiff Kelechian's allegations.

Because these Plaintiffs plausibly allege publication of their information on the Dark Web, they plead misuse. *See Clemens*, 48 F.4th at 157.

[6] *See Walters v. Fast AC, LLC*, 60 F.4th 642, 649 (11th Cir. 2023) ("it is important to separate the element of injury in fact from the element of traceability").

***Second***, Plaintiffs allege misuse besides publication on the Dark Web. Most Plaintiffs allege phishing or SIM-swapping, which is misuse of the contact and technical information they allege [redacted] stole. Opening Br. 40.[7] Moreover, several Plaintiffs allege fraudulent charges on the payment methods associated with their Samsung accounts. *Id.* Plaintiffs' allegations that [redacted] is skilled at these cyberattacks and targeted [redacted] because it enables them required the district court to draw a reasonable inference in their favor. *Id.*

Samsung's only response is assuming the truth of its fact sheet and the falsity of Plaintiffs' allegations. It claims to "undermine" Plaintiffs' misuse allegations by denying that [redacted] stole certain Plaintiffs' IMEI numbers (at 40-41), card information (at 41-42), and contact information (at 42). These denials violate pleading law. *See supra* pp.3-8.

***Third***, Samsung does not dispute that Plaintiffs' existing misuse allegations support a reasonable inference that other Plaintiffs' information also has been or will be misused.[8] Opening Br. 33-34, 42 (collecting cases). Accordingly, although

[7] Samsung is incorrect (at 35) that "'phishing' and 'SIM-swapping' are *not* 'identity theft and fraud.'" Both are forms of fraud, *see* Opening Br. 8-10; they involve knowingly making false statements to obtain things of monetary value.

[8] For the same reason, Samsung's argument (at 23-24) that Plaintiffs "compile" allegations fails: allegations regarding individual Plaintiffs' standing supports inferences as to others. Opening Br. 33-34, 42. Regardless, dismissal of a class action is improper if even a single named Plaintiff has standing. *Id.* at 28

"misuse is not necessarily required" for a data breach to create an injury-in-fact, *Clemens*, 48 F.4th at 154, Plaintiffs plausibly allege this factor.

**(3) *Nature of information.*** Plaintiffs plausibly allege the third factor too. The relevant inquiry is whether "the information taken in the data breach . . . g[ives] hackers the means to commit fraud or identity theft," as Plaintiffs allege here. *In re Zappos.com, Inc.*, 888 F.3d 1020, 1027 (9th Cir. 2018); *see also Clemens*, 48 F.4th at 159 (similar). Plaintiffs allege that [redacted] contains the nonpublic information of millions of Samsung consumers and explain how hackers can use that information for phishing, SIM-swapping, and other crimes. Opening Br. 7-10. Plaintiffs also allege that [redacted] stole a combination of financial and personal information, which *Clemens* said is "particularly concerning." *Id.* at 34 (citing 48 F.4th at 154, 157). Finally, Plaintiffs allege that [redacted] is uniquely sensitive because it contains detailed personal profiles of consumers. *Id.* at 35.[9] Samsung acknowledged as much when, after the Data Breach, it warned consumers about cyberattacks. *Id.* at 35-36.

(citing *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633-34 & n.11 (3d Cir. 2017)).

[9] Samsung faults Plaintiffs (at 13, 21, 31, 36) for not alleging they "still use" or "own" their Samsung devices, which is irrelevant: Plaintiffs allege [redacted] includes their profiles. And because Plaintiffs allege recent purchase of Samsung products, JA661, JA663-695 (¶¶ 153, 161-281), continuing use is inferred.

Samsung counters by denying the sensitivity of [redacted] as a whole and of particular information within it. These counterarguments fail.

***First***, [redacted] is sensitive. Samsung repeats the district court's error by describing the information as "mundane," "non-sensitive," and "publicly available." Samsung Br. 1, 3-4, 14, 17-18, 27, 30, 33-34, 48. Those denials are improper at the pleading stage. Opening Br. 43. And they are inaccurate because the information in [redacted] is *not* publicly available—much less in one place. *Id.*

Samsung's view lacks merit. Its main support (at 34-37) is its own fact sheet, which does not control at the dismissal stage. And Plaintiffs do *not* "admit that some (if not all) of th[e] information was already publicly available." Samsung Br. 14. Samsung's only citation for that "admi[ssion]" states that the information was "highly sensitive PII that Samsung both mined from the consumer's use of the Samsung products ***and*** that Samsung purchased from third parties." JA617 (¶ 2).[10]

Next, it is not "fanciful" that [redacted] included both personal and financial information. Samsung Br. 34-35. Samsung again assumes its fact sheet is true and Plaintiffs' allegations are false when it asserts that the financial

[10] Inclusion of social security numbers in the Data Breach is immaterial for pleading purposes. *See generally* Samsung Br. (mentioning them 22 times); Opening Br. 45-46. Many courts recognize other information as sensitive, and no court requires them for standing. Opening Br. 45-46 & n.5 (collecting cases).

information included only names of payment methods. *Id.* Plaintiffs allege that they provided Samsung payment card information, [redacted] included financial information, and several Plaintiffs suffered fraudulent charges on payment methods associated with their Samsung accounts after the Data Breach. JA616-618, JA627-628 (¶¶ 1-3, 25); Opening Br. 15-16. The reasonable inference is that the Data Breach included payment card information.

Finally, Samsung repeats its error when it denies that [redacted] contains detailed personal profiles of consumers. *See* Samsung Br. 37 (claiming to know "precisely what information was (and was not) exfiltrated"). Plaintiffs' allegations control: although "Samsung has refused to disclose" all the information that [redacted] stole, [redacted] "allows hackers to build a three-dimensional picture of millions of Samsung's consumers." JA621-622 (¶¶ 14-16).

Samsung's conduct after the Data Breach shows the information can be used for identity theft and fraud—it warned Plaintiffs they were at risk of misuse. Opening Br. 35-36. Its argument (at 38) that its belated notice helped consumers *avoid* misuse is incorrect. There is "no guarantee that mitigative measures will be effective." *Clemens*, 48 F.4th at 156. And here, Samsung's notice did *not* "identif[y]

the information involved," Samsung Br. 5. [redacted] stole more information than Samsung initially admitted. Opening Br. 40.[11]

***Second***, Samsung's efforts to downplay the sensitivity of particular information within [redacted] fail. Samsung has no response to Plaintiffs' allegation that <u>IMEI numbers</u> allow hackers to "make unauthorized transactions or access bank accounts"—harms that several Plaintiffs experienced after the Data Breach. *Id.* at 43-44. It does not defend the district court's comparison of IMEI numbers to financial information. *Id.* And the only support for its assertions (at 36) about which Plaintiffs had IMEI numbers stolen is its own fact sheet. *See supra* pp.3-8.

Samsung also mischaracterizes (at 36-37) one source among several for Plaintiffs' allegations about <u>IP addresses</u>. The source explains that an IP address allows hackers "to retrieve personal information" from ISPs and impersonate people.[12] It also explains why individuals *can* be harmed by DDoS attacks.[13] Even setting aside these misuses, Samsung does not dispute the others that the source

---

[11] Samsung also is incorrect (at 9) that "the fact sheets confirmed what Samsung had told Plaintiffs and the court." Samsung gave the court the idea that the information was "phonebook stuff"; the fact sheets disproved that. Opening Br. 18-19.

[12] Monique Danao, *What Can Someone Do With Your IP Address?*, Forbes (June 10, 2024), https://perma.cc/VUW4-BN2X.

[13] *Id.*

discusses, including "s[ale] . . . on the dark web for profit" and use in conjunction with a port scanner to give hackers "access to [one's] device."[14]

For those reasons, the Data Breach created an imminent risk of identity theft and fraud under *Clemens*. Neither Samsung nor the district court disputes concreteness. Opening Br. 36. So Plaintiffs plead an injury-in-fact.

**2. Plaintiffs plead several other injuries-in-fact**

Plaintiffs plead several other injuries-in-fact. Samsung does not defend the court's erroneous holding that because it denied an imminent risk of identity theft and fraud, it did not need to address these actual injuries. *See* JA23-24.

**a. Plaintiffs allege they lost the benefit of the bargain and the sale value of their information**

***Benefit of the bargain.*** Plaintiffs have standing because they allege Samsung breached contracts requiring it to protect [redacted]. Opening Br. 10. The breach is an injury-in-fact. *See Carlsen*, 833 F.3d at 909 (privacy-policy breach was injury-in-fact); *see also* Opening Br. 46-49 & nn.6-7 (collecting cases).

Samsung does not explain why this Court should adopt a different rule. Its assertion (at 48-49) that Plaintiffs forfeited this argument is incorrect. Plaintiffs made this argument below. *See* Dkt. 205 at 13 ("Because Samsung failed to provide [proper data management] despite receiving full consideration from Plaintiffs, they

---

[14] *Id.*

lost the benefit of their bargain."). They did not equate it with their overcharge theory. *Id.* at 12 (header: "Lost Benefit of the Bargain and Overpayment"); JA23-24 (district court listing "lost benefit of the bargain" as an additional injury).

Samsung is incorrect (at 50) that Plaintiffs did not plead a contract. Plaintiffs allege Samsung's "Privacy Notice is an agreement between Samsung and individuals who provided their PII to Samsung," and they detail Samsung's promises. JA710-713 (¶¶ 331-339); *see also*, *e.g.*, JA712-713 (¶¶ 342-347). Samsung's arguments (at 50) about when or where Plaintiffs purchased their devices fail. The Notices "state that they apply to 'personal information about [consumers]' that Samsung obtains 'when [they] interact with' " Samsung. JA710 (¶ 332).

Finally, Samsung misstates the law. This Circuit never has held that breach of contract is not an injury-in-fact. *See Clemens*, 48 F.4th at 156 (declining to reach the issue); *Lewis v. GEICO*, 98 F.4th 452, 460-61 (3d Cir. 2024) (addressing only other injuries). Many other courts have held breaches are injuries-in-fact. Opening Br. 47 & nn.6-7 (collecting cases); *see also Clemens*, 48 F.4th at 160-62 (Phipps, J., concurring in the judgment) (breach-of-contract claim confers standing); *Clippinger v. State Farm Auto. Ins. Co.*, 156 F.4th 724, 733 (6th Cir. 2025) ("even without a claim of damages, breach of contract is a concrete injury in fact"). Samsung ignores this authority; it does not try to distinguish *Carlsen*. 833 F.3d at 909. Contractual breach is an injury-in-fact.

***Lost sale value of information.*** Plaintiffs also have standing because they lost the sale value of their information. Opening Br. 48-49 & n.8 (collecting cases).

Samsung is incorrect (at 47) that Plaintiffs needed to "allege they considered selling their personal information" and "identify [its] supposed value." Plaintiffs already explained it suffices to allege "that a market exists for their PII," including that "information has already been posted for sale" on the Dark Web. Opening Br. 48-49. And Plaintiffs allege the information's value is quantifiable. *Id.* at 17.

The cases Samsung cites (at 47) are unpersuasive. In *Cooper v. Bonobos, Inc.*, the plaintiff did not allege that "someone else would have bought [the information] as a stand-alone product," 2022 WL 170622, at *5 (S.D.N.Y. Jan. 19, 2022)—but that is precisely what Plaintiffs allege here, JA630-632, JA640-643 (¶¶ 33-36, 62-73). And in *McGowan v. CORE Cashless, LLC*, the court did not assess lost sale value independently. 2023 WL 8600561, at *12 (W.D. Pa. Oct. 17, 2023).

Samsung fails to distinguish Plaintiffs' cited cases. Plaintiffs need not allege inability to "obtain a mortgage, credit card, business loan, tax return, or . . . apply for a job." Samsung Br. 47-48. *Marriott* mentions these harms but holds that plaintiffs allege lost sale value if they identify a market for personal information. *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 461-62 (D. Md. 2020); *cf. Capiau v. Ascendum Mach., Inc.*, 2024 WL 3747191, at *6-7

(W.D.N.C. Aug. 9, 2024) (holding lost sale value was an injury-in-fact, but plaintiff must allege a market).[15] Plaintiffs do so here. Opening Br. 17.

Accordingly, because Plaintiffs allege they lost the benefit of their bargain with Samsung and the sale value of their information, they have standing.

**b. Plaintiffs allege they were overcharged for Samsung's products**

Finally, Plaintiffs have standing because overpayment for Samsung products is an injury-in-fact. Opening Br. 49-51; *see also Carlsen*, 833 F.3d at 909-10.

Ignoring *Carlsen*, Samsung invents standing requirements that Plaintiffs supposedly fail to meet. First, Samsung claims (at 51) that Plaintiffs failed to plead they saw "any representations regarding data security." But in the only case Samsung cites for this supposed requirement, the plaintiff alleged she overpaid for a service (tire-registration compliance), but could not identify any representation by the defendant that it would provide that service. *See Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 888 (3d Cir. 2020). By contrast, Plaintiffs identify multiple agreements that Samsung would protect their privacy, which Samsung failed to do. JA630-632, JA710-714 (¶¶ 33-37, 331-339, 342-346, 353-357).

---

[15] Markets exist even for information Samsung deems (at 48) "mundane." *See*, *e.g.*, *Stallone v. Farmers Grp., Inc.*, 2022 WL 10091489, at *1 (D. Nev. Oct. 15, 2022) (driver's license numbers); *Smallman v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175, 1185, 1191 (D. Nev. 2022) (contact information and dates of birth); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *14 (N.D. Cal. Aug. 30, 2017) (information used for "targeted advertising").

Next, Samsung's cases (at 51-52) do not support a requirement that Plaintiffs must plead an exact overcharge amount. For example, *Attias v. CareFirst, Inc.*, concerned a state-law requirement that plaintiffs plead "actual damages." 365 F. Supp. 3d 1, 13 (D.D.C. 2019); *see also In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 287 (3d Cir. 2018) (plaintiff need not "allege the *exact* value of her economic injury"). Rather, as Samsung's cases explain, Plaintiffs must allege only that they paid a "premium in exchange for data security." *Legg v. Leaders Life Ins. Co.*, 574 F. Supp. 3d 985, 995 (W.D. Okla. 2021). Plaintiffs allege just that. Opening Br. 17.

Finally, like the district court, Samsung errs in asserting (at 52) that Plaintiffs' overcharge injury rises and falls with their risk of identity theft and fraud. These are separate injuries. *See supra* p.20. Samsung's cases are not contrary. In *Johnson & Johnson*, the plaintiff "chose not to allege" risk of future physical harm, and the court separately assessed the alleged overcharge. 903 F.3d at 289. And *C.C. v. Med-Data Inc.*, also treated overcharge as an independent injury; Samsung quotes the court's concreteness holding, but neither Samsung nor the district court challenges that element here. 2022 WL 970862, at *9 (D. Kan. Mar. 31, 2022); *see supra* p.20. Accordingly, Plaintiffs have standing on an overcharge theory.

### B. Plaintiffs Plead Their Injuries Are Fairly Traceable And Redressable

Samsung does not dispute redressability. And Plaintiffs plead traceability because they plausibly allege that Samsung's failure to protect their information caused [redacted] theft and publication of it. Opening Br. 52-53; *see Clemens*, 48 F.4th at 158 (alleging defendant's "failure to safeguard her information enabled CLOP to publish it on the Dark Web" pleaded traceability).

Samsung's arguments lack merit. Its assertion (at 16) that "Plaintiffs do not allege any connection between the information exfiltrated in the [Data Breach] and the[ir] asserted injuries" is wrong. In fact, Plaintiffs allege they suffered cyberattacks that information in [redacted] enabled and that bear [redacted] signature. Opening Br. 15-16, 32-33.

Samsung's related argument (at 44-45) that "the nature of the information" negates traceability disregards Plaintiffs' allegations about the sensitivity of the information and conflates traceability and injury-in-fact, *see supra* pp.13-14 & n.6, 16. Its claims (at 44-45) that several Plaintiffs' injuries cannot be traced to the Data Breach because [redacted] stole little or none of their information require assuming the truth of its fact sheet and the falsity of Plaintiffs' allegations. *See supra* pp.3-8.

Samsung's argument (at 4, 10, 45-46) that some Plaintiffs had information "stolen in *other* data breaches" is beside the point. Plaintiffs need not exclude other causes; traceability is a "relatively modest" burden. *Bennett v. Spear*, 520 U.S. 154,

171-72 (1997); *see also Lujan*, 504 U.S. at 560 ("fairly traceable" does not mean "certainly traceable"); *Remijas*, 794 F.3d at 696. Nor does it matter (at 13) that Plaintiffs do not allege the information they gave to Samsung or ongoing product use. As the district court said, it is not "reasonable that people would know" the former. JA128-130. And the latter is irrelevant or can be inferred. *See supra* p.16 n.9.[16]

Finally, like the district court, Samsung mistakenly focuses only on whether identity theft and fraud are traceable to the Data Breach. Samsung does not argue that the other injuries-in-fact that Plaintiffs allege are not traceable. Plaintiffs plead that all of their injuries are traceable to the Data Breach.

## III. THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING LEAVE TO AMEND

The district court abused its discretion by denying leave to amend, which it based only on purported futility. JA32. But Plaintiffs never amended their complaint in response to a jurisdictional dismissal, and the Stroz Materials support allegations undermining the court's conclusion that the information was not sensitive. Opening Br. 54-57. The court hastily dismissed the SAC permanently and without a hearing.

---

[16] Samsung mischaracterizes the SAC when it says (at 13) Plaintiffs' purchases "stretch[] back" 20 years. Samsung's citation—JA665—states that Plaintiff Applegate "has been purchasing Samsung products for twenty years," including almost a dozen within the last five years. *Id.*

Samsung's suggestions that Plaintiffs amended to avoid dismissal for lack of standing are incorrect. ***First***, Samsung incorrectly states (at 13) that Plaintiffs filed the SAC "[i]n light of . . . the court's concerns regarding Article III standing." In fact, Plaintiffs voluntarily filed the SAC in response to the district court's statements about its *length*. Opening Br. 20. Samsung cites JA609, but that page supports Plaintiffs' explanation. ***Second***, Samsung implies (at 19) that the court identified standing issues before Plaintiffs' earlier amendment. That, too, is false: the court's oral statement related to causation, not standing. JA32; Opening Br. 19 n.1; *see U.S. ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co.*, 839 F.3d 242, 250 (3d Cir. 2016) (oral statements insufficient to notify plaintiff about pleading deficiency).

Amendment is not futile. The Stroz Materials imply the Data Breach was broader than Samsung admitted and involved databases that include "[c]omplete stored payment card information." Opening Br. 56. Samsung does not deny this fact; it simply insists (at 56) the Stroz Materials would not "alter any part of the Court's standing analysis." But the theft of Plaintiffs' card information undermines the court's case-dispositive conclusion that the information [redacted] stole is not sensitive. The theft of that information also contradicts Samsung's statement (at 5) that the Data Breach "did *not* 'impact . . . credit and debit card numbers'" (not to mention Samsung's claims (at 37) to know "precisely what information was (and was not) exfiltrated").

Unable to defend the district court's decision on its own terms, Samsung invites affirmance on erroneous alternate grounds.

***First***, Samsung's claim (at 53) that Plaintiffs did not request leave to amend until their motion for reconsideration is incorrect. Plaintiffs requested leave to amend in their opposition to the dismissal motion and later renewed that request. *See* Dkt. 205 at 110 n.53.

***Second***, the general rule that plaintiffs must attach a proposed amendment to a motion for leave does not apply: Samsung's belated production of the Stroz Materials prevented Plaintiffs from serving one and Plaintiffs "made clear the substance of [their] proposed amendment." *Zaidi v. Ehrlich*, 732 F.2d 1218, 1220 (5th Cir. 1984); *see also* Opening Br. 57. Samsung's assertion (at 55) that "Plaintiffs said nothing" about the Stroz Materials is wrong: the parties told the court that Samsung produced these Materials, and Plaintiffs were working diligently to understand them when the district court abruptly dismissed the SAC. *See* JA593-594; Opening Br. 56-57. Plaintiffs' reconsideration motion requested two weeks to file an amendment, and the district court should have granted that request. *See* Dkt. 211-1 at 15.

## IV. THE DISTRICT COURT ERRED IN DISMISSING WITH PREJUDICE

Samsung's argument for dismissal with prejudice (at 56-57) violates *Cook v. GameStop, Inc.*, 148 F.4th 153 (3d Cir. 2025). There, the Court held that "a

dismissal for lack of Article III standing must be 'without prejudice'" "[*e*]*ven when* a district court determines that granting leave to amend would be futile." *Id.* at 163 (emphasis added). So *Cook* forecloses Samsung's argument.

**CONCLUSION**

The Court should vacate the district court's order dismissing this case with prejudice and without leave to amend and remand for further proceedings.

Dated: August 20, 2026

Respectfully submitted,

/s/ *David C. Frederick*

David C. Frederick
Ryan M. Folio
Alyssa J. Picard
KELLOGG, HANSEN, TODD,
FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
dfrederick@kellogghansen.com
rfolio@kellogghansen.com
apicard@kellogghansen.com

James E. Cecchi
Caroline F. Bartlett
Jason H. Alperstein
James A. O'Brien III
CARELLA BYRNE CECCHI
BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
(973) 994-1700
jcecchi@carellabyrne.com
cbartlett@carellabyrne.com
jalperstein@carellabyrne.com
jobrien@carellabyrne.com

*Counsel for Appellants*

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 6,490 words.

2. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman font. As permitted by Federal Rule of Appellate Procedure 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

3. In addition, pursuant to 3rd Circuit L.A.R. 31.1(c), the undersigned hereby certifies that the text of the electronic brief filed with the Court is identical to the paper copies, that a virus detection program (CrowdStrike) has been run on the electronic file, and that no virus was detected.

Dated: August 20, 2026

/s/ *David C. Frederick*
David C. Frederick

## CERTIFICATE OF FILING AND SERVICE

The undersigned hereby certifies that, on August 20, 2026, I caused an electronic copy of the foregoing to be electronically filed with the United States Court of Appeals for the Third Circuit using the CM/ECF system, which automatically will send notification of such filing to counsel of record.

The same date, I served copies of the Sealed Appellants' Reply Brief on opposing counsel via email.

/s/ *David C. Frederick*
David C. Frederick

## CERTIFICATE OF BAR MEMBERSHIP

Pursuant to 3rd Circuit L.A.R. 28.3(d) and 46.1, I, David C. Frederick, hereby certify that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

Dated: August 20, 2026

/s/ *David C. Frederick*
David C. Frederick